BEHL *v.* MUTUAL BANK & TRUST COMPANY.

4-6101                                     144 S. W. 2d 1081

Opinion delivered November 25, 1940.

*T. J. Gentry, Jr.,* and *Eugene R. Warren,* for appellant.

*Milton Keiner, Barber & Henry* and *John B. Thurman,* for appellee.

GRIFFIN SMITH, C. J.   November 28, 1938, Mutual Bank & Trust Company purchased of National Coil Piston Ring Sales Corporation[1] twenty-four trade accept-

---

[1] The bank and the sales corporation were domiciled in St. Louis.

ances,[2] payable monthly. They were executed by B. Frank Behl and L. R. Sherry, partners doing business as Little Rock Auto Parts Company.

The first eight acceptances, amounting to $456.97, were paid. Thereafter the acceptors repudiated the remaining sixteen on the ground that fraud perpetrated by the payee induced acceptance, and that the bank was not an innocent purchaser. The unpaid obligations varied in amounts from $68.97 to $73.92.

Since 1934 the Little Rock firm had sold piston rings manufactured by National Corporation,[3] and supplied by it, the business having been on a consignment basis.

In 1938 National experienced financial difficulties, due to the fact that manufacturers of automobiles made changes in engine construction. National pistons did not function satisfactorily in the new models, and complaints became general.

I. W. Klumb of National came to Little Rock and converted the consignment account of Behl and Sherry into trade acceptances. Behl says that Klumb told him the paper would not be discounted. When this transaction occurred National owed the bank between $12,000 and $14,000. November 25, 1938—two days after date of the acceptances—National's account was credited with $1,496. Action of the bank's loan board in approving

---

[2] Acceptance No. 22545 is: "St. Louis, Mo., November 23, 1938. To Little Rock Auto Parts Co., 813 Izard St., Little Rock, Ark. On August 25, 1939, pay to the order of National Coil Piston Ring Sales Corp. $66. The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawee may accept this bill payable at any bank, banker or trust company in the United States, which such drawee may designate with 6 per cent. interest. Accepted at Little Rock on November 23, 1938. Payable at W. B. Worthen Co., Bankers. Buyer's signature: Little Rock Auto Parts Co., by agent or officer, B. F. Behl. National Coil Piston Ring Sales Corp., by B. B. Smith, president."

[Of trade acceptances, Prof. James A. Ballentine, in his Law Dictionary, says: "A draft or bill of exchange drawn by the seller on the purchaser of goods sold, and accepted by the purchaser. It is a form of obligation revived in this country in recent years under the regulation of the Federal Reserve Bank Board."]

[3] When National Coil Piston Ring Sales Corporation became insolvent a new company was organized known as Coil Piston Ring Company of America. For the purpose of brevity the old corporation will be referred to as "National Corporation," and the new organization will be identified as "Coil of America."

the transaction was not expressed of record until November 28.

In January, 1939, National owed the bank about $10,-000 for borrowed money and had a contingent liability of $20,000 to $25,000 on rediscounted paper. In November, 1938, while National was liquidating, Coil Piston Ring Company of America was organized with funds advanced to a third party by Mutual Bank & Trust Company on the guaranty of officers of the bank who were to share in profits.

It is insisted by appellants that there was a plan by officers of the bank to embarrass National in order that the new organization might capitalize upon its plan of business. There is the allegation that before appellants knew that piston rings made by National had become obsolete, bank executives conceived the two-fold purpose of procuring trade acceptances covering National's consigned stocks and applying them on the bank's credits, while at the same time (through refusal to advance additional funds) National would be impaired to such an extent that the new company could take over the distribution of pistons then being manufactured, which were suitable for late model cars.

It is urged that appellants were not, in November, 1938, informed of the "worthlessness" of the old piston rings, and that Klumb, under direction of the bank, came to Little Rock and converted the consignment account into trade acceptances for the sole purpose of salvaging values which in due course would have represented a total loss. Of course, if the evidence sustains these conclusions, relief should be given. But does it?

Behl testified that beginning in April, 1939, and through June, he discovered that piston rings supplied by National were defective. Thereafter, he continued to purchase rings, dealing with Coil of America. In September, 1939, he returned to National $1,480 worth of rings. Behl admitted that these rings were suitable for old cars. It is clear from the testimony that they were being used generally in November, 1938, and that they

did possess value. Hence, there was no failure of consideration.

It may be argued with some conviction that officers of Mutual Bank & Trust Company should not have mixed banking with manufacturing, and that when Byron Moser, president, and E. S. Schmid, executive vice-president, underwrote advances to Coil of America there was expectation of profit upon the wreck of National. On the other hand, it is quite evident that for a year prior to final parting of the way the bank had consistently endeavored to terminate its credit arrangements with the corporation, without unnecessary harshness. This it had a legal right to do, and we are not willing to say that the evidence warrants a finding that there was a conspiracy, or even an independent design, to injure National's business. The bank's primary purpose was to have its loans to National repaid; and, while acquisition of control of the new company seems to have been an incident to knowledge of National's business and the scope of its operations, this affords no basis for holding that trade acceptances acquired in due course without knowledge of infirmities should be canceled. *Citizens Union Bank* v. *Thweatt,* 166 Ark. 269, 265 S. W. 955.

The chancellor was correct in finding that the bank was an innocent holder of the commitments. Affirmed.